L. Curtis POTTER, Executor of the Estate of Dorothy R. Potter, Deceased, and L. Curtis Potter, Appellants,

v.

ST. LOUIS–SAN FRANCISCO RAILWAY COMPANY, Appellee.

No. 79–1965.

United States Court of Appeals, Eighth Circuit.

Submitted April 16, 1980.

Decided June 9, 1980.

Rehearing Denied June 25, 1980.

---

18. *See* notes 12 and 13 *supra* and accompanying text.

Ben Ely, Jr., Kortenhof & Ely, St. Louis, Mo. (argued), and Ray White, III, St. Louis, Mo., on brief, for appellants.

Gerald D. Morris, Asst. Gen. Counsel, St. Louis-S.F. Railway Co., St. Louis, Mo. (argued), and Donald E. Engle, St. Louis, Mo., on brief, for appellee.

Before HEANEY and ARNOLD, Circuit Judges, and SACHS, District Judge.[*]

SACHS, District Judge.

This diversity case arose out of a collision between a vehicle driven by L. Curtis Potter (in which his wife Dorothy R. Potter was a passenger) and a train operated by defendant. Mrs. Potter's executor (Mr. Potter) obtained a $30,000 judgment against the railroad for her injuries sustained in the collision. The railroad counterclaimed against Mr. Potter personally, seeking contribution. The district court[1] overruled Mr. Potter's motion to dismiss for failure to state a claim upon which relief could be granted. The railroad obtained a judgment for contribution in the amount of $27,000 from Mr. Potter. Mr. Potter appeals.

The principal question on appeal is whether the district court made a correct choice of law in applying Michigan law on interspousal immunity and allowing a claim to be made, when the collision occurred in Missouri, the driver and his wife were Michigan residents, and the immunity issue arises on a claim for contribution presented by the defendant railroad company against the husband. While the choice of law issue is by no means a settled one, we conclude that the district court made the correct ruling.[2]

The choice of law question arose because the doctrine of interspousal immunity has been abolished in Michigan, *Hosko v. Hosko*, 385 Mich. 39, 187 N.W.2d 236 (1971), but is adhered to in the forum state of Missouri. *Martinez v. Lankster*, 595 S.W.2d 316 (Mo.App.1980).[3] The district court sitting in Missouri was required to apply the law that the Missouri courts would apply. *Klaxon Co. v. Stentor Electric Mfg. Co., Inc.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

The district court ruled, on the basis of the Missouri Supreme Court opinion in *Kennedy v. Dixon*, 439 S.W.2d 173 (Mo. 1969), that Michigan law should govern the question of interspousal suits, and that the contribution claim could be litigated. In *Kennedy*, the Missouri court abandoned the rigid *lex loci delicti* approach to the choice of law in tort cases in favor of the "most significant relationships" rule set forth in § 145 of the Second Restatement of Conflict of Laws. The district court concluded that Michigan has "a greater interest in suits between husband and wife since the domicile and relationship of the spouses in this case are in Michigan . . . Missouri has no interest in the marital relationship between spouses who are citizens of another state." We agree with the result and rationale.

Appellant argues that the question in this case is whether a cause of action arose rather than which state law governs the cause of action. Appellant supports the argument by citing language from a recent

---

[*] The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri, sitting by designation.

[1] The Honorable James H. Meredith, Senior District Judge, United States District Court for the Eastern District of Missouri.

[2] Even if we were less sure of the proper result, the issue here is a question of local law, not yet controlled by any appellate decision from Missouri, and we give great weight to the conclusions of the experienced district judge regarding likely developments of the law in his home state. *Matter of American Beef Packers, Inc.*,

548 F.2d 246, 248 (8th Cir. 1977); *Fox v. Ford Motor Co.*, 575 F.2d 774, 783 (10th Cir. 1978). A district court's "feel" for local law is often persuasive. *Ritzau v. Warm Springs West*, 589 F.2d 1370, 1377 (9th Cir. 1979).

[3] The issues before the court in *Martinez* were 1) whether the doctrine of interspousal immunity should be abrogated and 2) whether a joinder of plaintiff's husband as a third party defendant is permissible. Adherence to the doctrine was affirmed, and it was decided that a third party action violates the Missouri rule.

Missouri case that purportedly establishes that the substantive law of the state where the accident occurred is, as a matter of course, to be applied in determining whether any cause of action came into existence. *Griggs v. Riley,* 489 S.W.2d 469, 471 (Mo.App.1972). Appellant further supports his argument by asserting that Missouri still accepts the unitary theory of marriage, and that no cause of action arises from spousal conduct, because negligence in that context is the "equivalent in law of negligently injuring oneself." *Huff v. LaSieur,* 571 S.W.2d 654, 655 (Mo.App.1978); *Ebel v. Ferguson,* 478 S.W.2d 334 (Mo.1972).

The court in *Griggs,* however, preferred to reserve ruling on the source of law when a Missouri accident occurs but a party asserts applicability of out-of-state interspousal immunity law. 489 S.W.2d at 472 n. 6. *Huff* questions whether the "single unit" theory of marriage is the basis for immunity in Missouri. 571 S.W.2d at 655. And the author of the plurality opinion in *Ebel,* on which appellant relies, has recently stated that *Ebel* has been overruled, insofar as it "bases the doctrine of interspousal tort immunity on 'the common law concept that a wrongful act between spouses does not give rise to a cause of action.'" *Nebbitt v. Nebbitt,* 589 S.W.2d 297, 301 (Mo.1979) (dissenting opinion).

In the present case, a person has been injured in Missouri largely because another person was negligent. A cause of action would normally arise in Missouri because it is "the policy of (that) state to compensate victims of negligent driving . . . " *Griggs, supra,* 489 S.W.2d at 472. What constitutes negligent driving would, under *Kennedy v. Dixon, supra,* be determined by the law of Missouri, the place where the collision occurred. Whether a special relationship affects the remedy, however, would not necessarily be determined by the *lex loci delicti,* if *Kennedy* controls, as it must.

As between spouses domiciled in Missouri, a remedy for negligent injury in Missouri is denied, apparently because of local public policy considerations. *Ebel, supra,* 478

S.W.2d at 339 (concurring opinion). In the present case, however, there was no disabling local relationship; instead, the special relationship existed under Michigan law. The district court was surely justified in believing that a Missouri court would probably look beyond the legal fiction that Mr. Potter had negligently injured himself, and would, moreover, probably hesitate to impose Missouri concepts of interspousal immunity on persons domiciled elsewhere.

The question whether the marital relationship gives rise to immunity from suit is to be analyzed according to the principal contacts rule set forth in the Second Restatement.

> [T]he state of the parties' domicil will almost always be the state of dominant interest, and, if so, its local law should be applied to determine whether there is (tort) immunity in the particular case.

Comment (b), § 169, Restatement (Second) of Conflict of Laws.

Appellant relies, however, upon Comment (c) to § 169 of the Second Restatement, although it does not necessarily yield the result which appellant seeks. The comment states that policies of the state where the parties reside may not be controlling as to spousal immunity when an injured spouse brings suit against a third party and he seeks contribution from one of the spouses. The comment should perhaps be restricted to the context of the cases cited in the Reporter's notes, where an immunity existing in the state of the parties' residence was not applied to create immunity in a third party action arising elsewhere. None of the cases cited by appellant or by the Second Restatement requires an immunity recognized in the state in which the tort occurred to be exported when a third party seeks contribution from a nonresident spouse.

Even if the law of the marital domicile were not insistently applied to suits involving third persons, because of Comment (c), § 169, that comment does not provide a rule favoring appellant, but simply directs that "the question of immunity should be determined by the law selected by application of

the rule of § 145." Section 145 provides as follows:

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

The "particular issue" of interspousal immunity, which appellant wishes to invoke, would seem most pertinently governed by the law of the marital domicile, as stated in § 169. Circling back and forth between § 145 and § 169 may be avoided, however, by relying on a very recent Missouri decision not available to the district court. *Martinez v. Lankster, supra.* In that case the Missouri Court of Appeals, Eastern District, ruled that the same result should occur in a third-party-contribution case as would occur in a direct suit between the spouses. 595 S.W.2d at 318–9, Following this directive, a court should make the choice of law which would be required if Mrs. Potter had sued Mr. Potter for negligence in Missouri, and § 169 would require use of Michigan law on interspousal immunity.

4. The ruling finds some additional support in a federal court decision which held that the law of the state of the marital domicile rather than the law of the state in which the accident occurred should be applied in a third party contribution situation. As in the present case,

We are thus satisfied that the district court's ruling on the question of interspousal immunity is in accord with the decision that a Missouri court would have reached on the same facts.[4]

■ Appellant further claims that the district court erred in admitting the testimony of a defense witness, Groff, on the condition of relays that operate warning lights and bells at the railroad crossing at which the accident occurred. Proof that the lights and bells were operating properly may have helped the railroad hold down its proportionate share of the liability. Appellant's objection is that Groff's knowledge was too remote in time to permit an inference as to the condition of the equipment at the time of the accident.

In urging error, appellant places his sole reliance on *Phillips v. Shaw,* 381 S.W.2d 768 (Mo.1964). In that case, the Missouri Supreme Court affirmed a ruling excluding testimony that there were "numerous nicks on (a) lawn mower blade" in 1963, which testimony had been offered to prove the condition of the blade in 1960. In the present case, the witness testified that he could determine from seals on the relays and from attached tags that the relays had not been altered or changed from the time they were put in service. There was additional testimony on this subject and a full opportunity to cross-examine the witness and to impeach his conclusions. We cannot observe error, or find prejudice from the Groff testimony.

Appellant contends that the following instruction is wrong in two respects:

If your finding shall be for the plaintiff L. Curtis Potter, executor of the estate of Dorothy Potter, deceased, and if you further find that L. Curtis Potter was negligent, you will use another form of verdict and insert in the blanks left for that purpose the percentage of negligence of

the law of the state of the domicile did not confer immunity and the law of the state of the occurrence did confer immunity. *Tucker v. Norfolk and Western Railway Co.,* 403 F.Supp. 1372 (E.D.Mich.1975).

the St. Louis-San Francisco Railway Company, and the percentages must total 100 percent, and you will further find the amount of damages suffered by Dorothy Potter, deceased, having one of your number sign it as Foreman.

■ First, appellant contends that under the circumstances of this case, both the railroad and Mr. Potter could not have been at fault. We find this argument to be without merit. The railroad may, for instance, have been partially at fault for allowing vegetation to grow too near the crossing or for not maintaining the signal light and bell. At the same time, Mr. Potter may have been partially negligent for driving carelessly onto the railroad tracks in the path of the train.

■ Second, appellant contends that the instruction wrongly forced the jury to rely on a percentage of "fault" and failed to permit the jury to assess monetary damages between Mr. Potter and the railroad. The district court's instruction, however, corresponds in substance to the instruction approved by the Missouri Supreme Court in *Missouri Pacific Railroad Co. v. Whitehead & Kales Co.*, 566 S.W.2d 466 (Mo.1978). There was no error in this respect.

Appellant's fourth point is that the following portion of the court's instruction is erroneous in allowing a finding of his negligence:

. . . if you believe: First, plaintiff L. Curtis Potter either: failed to heed the electric flasher warning signals, if they were timely operating, or failed to heed the warning whistle of the train, if it was sounded, or failed to keep a careful lookout, or drove his vehicle at an excessive speed . . .

■ Appellant contends that there was no evidence to support the submission of excessive speed. There was no testimony putting Potter's speed higher than 20–25 m. p. h. Appellee argues that the question is not the rate of speed but rather whether the speed was excessive under the circumstances so as to be a negligent speed. *Hammonds v. Haven*, 280 S.W.2d 814 (Mo.

1955). There is no fixed point at which speed becomes excessive, unless it is fixed by ordinance or statute, and submissibility of the issue must be determined on a case-by-case basis. We find that there was a question for the jury in the present action and that the court's omission of the phrase "under the circumstances" from the instruction on speed operated, if at all, in appellant's favor.

■ Appellant also contends that allowing the jury to decide whether the flashers operated or whether the whistle sounded constitutes an impermissible roving commission to the jury. In support of his position, appellant cites *Gumm v. Herman*, 400 S.W.2d 447 (Mo.App.1966). *Gumm* deals with the submission of two conflicting theories of negligence. It has no application to the instant case, and we cannot say that the form of the instruction is erroneous.

■ Appellant next contends that the following excerpt from defendant's closing argument improperly interjected insurance coverage into the case:

I don't know, Mr. Frank says that it is coming out of Mr. Potter's pocket. Mr. Ely's been sitting there for something. You know, he's here. I wonder—Mr. Frank said it was coming out of Mr. Potter's pocket. You can use your judgment about that.

Defendant's remarks seem to us to be fair retort to the statement twice repeated by plaintiffs' counsel that Mr. Potter would pay money out of his pocket to the estate of his wife. In any event, appellant failed to preserve the issue with an objection. Failure to object to remarks made in argument generally constitutes a waiver of the possible prejudicial effect of such remarks. *Harris v. Zurich Insurance Co.*, 527 F.2d 528, 532 (8th Cir. 1975). This is not one of those rare instances when the plain error rule should be applied to overcome the absence of an objection and to preserve the issue for appeal. While normally impermissible, the argument as to insurance was not inflammatory.

Appellant finally contends that the district court erred in overruling his motion

for judgment notwithstanding the verdict and his motion for a new trial. We have reviewed appellant's argument and find no merit in his assertion that the verdict was against the weight of the evidence.

For the foregoing reasons, we affirm the district court's pretrial order denying the motion of Mr. Potter to dismiss the railroad's counterclaim for contribution, and we affirm the judgment of the district court.